IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION

| | | |
|---|---|---|
| JOSEPH SMITH, | § § § | |
| PLAINTIFF, | § | |
| V. | § | CASE NO. 2:07-CV-527 |
| | § | |
| GENERAL ELECTRIC COMPANY, | § § | JURY TRIAL REQUESTED |
| DEFENDANT. | § § | |

# **PLAINTIFF SMITH'S RESPONSE TO DEFENDANT'S MOTION TO STRIKE**

Plaintiff Joseph Smith ("Smith") respectfully requests the Court deny Defendant General Electric Company's ("GE") Motion to Strike as well as GE's alternative request for Smith to amend his disclosures. Smith's Infringement Contentions fully comply with Patent Rule 3-1 and GE's accusations are without basis.

## I. INTRODUCTION

GE's baseless motion to strike only delays a substantive response to Smith's infringement contentions. First, GE asserts that each and every one of Smith's claim charts is grossly deficient. Such an overreaching assertion demonstrates the unreasonableness of GE's position and begs the question whether GE bothered to fully read the contentions before filing its motion to strike. Second, Smith's claim charts assert infringement against a specific product-- GE's VeriWise Asset Intelligence system. GE muddles the issues at the heart of the lawsuit by ambiguously breaking the components and functions of the VeriWise system into individual "products." Third, GE's complaint about designation of Literal Infringement and Doctrine of Equivalents

1

overlooks basic tenets of patent law.  Finally, GE misleads the Court through mischaracterizations about the preparation of the claim charts and production to Smith. Since Smith's contentions fully and completely comply with P.R. 3-1, GE's motion to strike merely involves the Court in an unreasonable and illogical delay tactic.

**I.    SMITH'S CLAIM CHARTS SATISFY P.R. 3-1**

Smith's claim charts are detailed, thorough, and complete.  Each element of every asserted claim is referenced to supporting literature.  In most cases, the supporting references are GE's own documents.  Even a cursory review of Smith's claim charts reveals that they provide a detailed, element-by-element analysis of every asserted claim.  These claim charts are the product of numerous hours of research and analysis, both before and after Smith filed this lawsuit.

Yet, GE vaguely complains that the claim charts are "grossly inadequate," evidently substituting hyperbole for its lack of specificity.  In its motion to strike, GE contends that Smith's claim charts "are devoid of any explanation or analysis of what Smith's infringement positions are with **respect to any element** of his asserted claims, much less why [emphasis added]."[1]  Presumably, this means that Smith has left GE clueless on every element of every claim.[2]  For example, one of the elements in claim 15 calls for a "wireless network." GE's website says, "The VeriWise solution uses the most advanced and ubiquitous digital wireless network in North America . . . ."  Smith quotes this language in its claim chart and cites GE to the URL where that language is

---

[1] Defendant General Electric Company's Motion to Strike Plaintiff's Patent Rule 3-1 infringement Contentions ("Motion to Strike") p. 1.
[2] As ridiculous as this position sounds, it was confirmed during a conference among counsel. When asked what particular claims or claim elements were the subject of dispute, GE's counsel stated that every element of every claim was insufficient.

2

found on GE's own website. Yet, GE claims that that it does not understand Smith's infringement position on this element any more than the rest of the elements.

GE offers only two examples to support its contention that Smith's claim charts are "grossly inadequate," but ironically, those examples serve to make Smith's point that GE's position is completely unreasonable. GE's first example and the only one it spends more than a sentence discussing is the element found in claim 29 that states, "a database operable for storing information relating to each of said plurality of targets". GE argues that Smith "simply references two marketing web pages, one of them from a European website, neither of which mentions anything about a database."[3] One of the referenced web pages provides a schematic diagram of GE's VeriWise product under the caption, "How it Works" (See Below).[4] It depicts data gathered at the target (truck) being sent wirelessly to a GE server. To insure clarity, GE shows an icon of a server on the drawing and labels it as the "GE Server." A server implies both storage (database) and processing capabilities (computing).

---

[3] Motion to Strike p. 8.
[4] General Electric Company, "How it Works," (2008; accessed June 16, 2008)
 <http://www.trailerservices.com/veriwise/how.html>.



The diagram also illustrates that the GE customer may access the data on the GE server from the customer's personal computer (personal computer icon) or the customer's computer system (server icon). GE's VeriWise product works this way: The target (e.g. truck, train car, container, or automobile) is fitted with sensing, receiving and transmitting equipment. This equipment gathers and transmits data. This data may include location information or information about the target vehicle such as whether the cargo doors are open or closed. The gathered data is transmitted wirelessly to the GE server where the data is stored and processed. The customer may access the GE server either over the Internet or through an XML connection. This allows the customer to obtain various data from that particular customer's vehicles. For example, a customer could access the GE server and view the location of that customer's vehicle

plotted on a map. Not only does the diagram show that GE utilizes a database, the very nature of the VeriWise product requires that it have a database.

Smith also notes that GE identified a "Network Engineer," John Sopko, as a person with knowledge of the "VeriWise databases and data interactions." While Smith did not have this information when it prepared the claim charts, this piece of information further demonstrates that GE's position is spurious. GE disingenuously complains that it cannot determine why Smith believes this particular claim element is met or where it is found in the accused instrumentality. As to why, Smith has pointed GE to its own literature, which shows a database. Smith would also point GE to the fact that the very nature of the VeriWise product requires a database. As to where, Smith would simply suggest that GE follow Mr. Sopko to work one day.

The second example cited by GE deals with the element in claim 1 that says, "no port that allows access for reading the programming . . . ." GE only has this to say about the chart for claim 1: "As another example, the chart for claim 1 makes the naked assertion that '[b]ased on the information available, it appears that GE's controller does not have a port that allows access for reading the programming.' To the contrary, GE produced documents to Smith before Smith's infringement contentions were served that refute this allegation."[5] Here GE is simply arguing with Smith about infringement. This issue was raised by Smith counsel and specifically discussed in the motion conference. GE's counsel complained that Smith had not found any reference in the GE documents that specifically states that VeriWise does not have a port that allows access for reading the program. This is true, but the absence of a disclaimer of functionality does not prove the existence of that functionality. Smith's counsel pointed out that he found no

---

[5] Motion to Strike p. 8.

reference stating VeriWise could not fly, but that did not suggest that it could. In fact, the opposite is true. If VeriWise has the functionality in dispute, one would expect to find a reference describing that it has that functionality. In short, GE's position on the sufficiency of the claim charts is so inaccurate, so unrealistic, and so unreasonable that Smith does not know how to respond except to say that GE's position is inaccurate, unrealistic and unreasonable.

## II. IDENTIFIED PRODUCTS

In his claim charts, Smith identified the accused product as GE VeriWise, which is how GE identifies it telematics system. "GE VeriWise™ is the 'control center' for your mobile asset. Whether you have a trailer, rail car or container, our telematics system provides remote monitoring and diagnostics of your assets and freight via a user web interface – tailor made to fit your business."[6] As a beginning point, Smith identified the accused product by the same term and with the same level of specificity that GE used to identify its product to the marketplace. GE holds itself out as having one product— VeriWise Asset Intelligence—with various capabilities that can be customized to the customer's needs.

In the conference preceding the filing of GE's motion to strike, GE's counsel argued that "VeriWise" is a trademark that encompasses many different products and services. Smith's counsel simply asked that GE identify those many different products and services. GE's counsel was either unable or unwilling to do so. GE's counsel said that he did not know how Smith was defining GE's products. Smith's counsel pointed out that these alleged differing products are not Smith's products, but GE's products,

---

[6] http://www.geassetintelligenceeu.com/. This reference is found in various places in Smith's claim charts.

and GE ought to be able to identify them. While GE's counsel could not identify any of these differing products over the phone, he said that he could do so if he "burned some hours." Again, Smith's counsel pointed out that they were talking about GE's products, and that GE should not have to "burn" very many hours to simply identify its own products.

GE has done little to clarify this issue even with the filing of the motion to strike. GE claims, "A quick A-Z product search on the GE webpage, to which Smith's infringement contentions refer, reveals forty-seven distinct products."[7] The webpage itself tells a somewhat different story. The portion of the webpage with the caption "Products A-Z" has a pull down menu. The menu lists the following categories: Intermodal, Marine, Monitoring/Diagnostics, Rail, Reports, Sensors, Trucking, and "All." Under each of these menu selections, GE describes the various product features that can be provided by the VeriWise, but it does not "reveal forty-seven distinct" products. For example, by clicking the section titled "Reports," a page appears that lists and describes the various reports that VeriWise is capable of generating such as "Battery Status Report" or "Idle Asset Report," but these reports are part of VeriWise system. They are not separate products because they can only be generated through the VeriWise system.

As another example, one of the listings under the "All" section is a listing for a "Covert Antenna." This feature is described as follows: "Bracket mounted antenna installs over the front top rail of the unit and is concealed from view, to enhance security." Although GE claims that this is one of 47 distinct products, it is not a distinct product at all. The VeriWise system must have an antenna to transmit and receive

---

[7] Motion to Strike p. 7.

data, and the antenna cannot be used apart from the entire VeriWise system. GE is not identifying a separate product. It is simply touting an installation feature that it claims enhances security by concealing the antenna from view. Similarly, the listing for "Diagnostics Tool" is not a separate product, but merely constitutes GE's claim that it can trouble shoot problems over the air.

From the plaintiff's perspective, there is little profit in these types of disputes; and Smith wished to resolve this issue with GE even if that meant going beyond his obligations under Patent Rule 3-1. Smith counsel stated that he was open to the idea of providing GE with more information about its infringement analysis, but that it was incumbent on GE to identify its own products and explain how they differ. GE has to do better than simply say it installs its antenna so that it is not visible from the ground, and that this constitutes a distinct product, requiring a separate claims analysis from Smith. It is not a separate product, and that feature (if it can even be called a feature) has absolutely nothing to do with the issues in this lawsuit.

### III. LITERAL INFRINGEMENT AND DOCTRINE OF EQUIVALENTS

In all cases of infringement, Smith stated that the accused product literally infringes and infringes under the doctrine of equivalents. GE argues that stating the assertion at the beginning of each chart has, "greatly prejudiced GE's ability to prepare its defenses."[8] By definition, literal infringement is "When the properly construed claim reads on the accused device exactly." *Cole v. Kimberly-Clark Corp.*, 102 F.3d 524, 532 (Fed. Cir. 1996). Furthermore, "If accused matter falls clearly within the claim, infringement is made out and that is the end of it." *Graver Tank & Mfg. Co. v. Linde Air Products. Co.*, 339 U.S. 605, 607 (1950). Smith's claim charts detail each element with

---

[8] Motion to Strike, p. 9.

evidence of GE's exact infringement and designate literal infringement on each chart. Nothing more is required to demonstrate that the accused matter falls clearly within the claim and literally infringes.

Smith also satisfies the requirements for doctrine of equivalents. The essential inquiry is whether, "The accused product contains elements identical or equivalent to each claimed element of the patented invention." *Warner-Jenkinson Co. v. Hilton Davis Chem. Co.*, 520 U.S. 17, 40 (1997). The doctrine must be applied to each element and not to the invention as a whole. *Id.* at 29. Here too, Smith claims doctrine of equivalents at the top of each claim chart with evidence showing the GE product infringes, not to the invention as a whole. At the very least, the structure, function, and result demonstrated in the claim charts show the elements are equivalent, if construed such that the products are not identical. In both cases, GE pointlessly seeks for Smith physically to insert the words "literal infringement" and "doctrine of equivalents" each time an element is listed. Smith already clearly indicates that information at the top of each chart. In short, this is a cosmetic and not a substantive complaint.

## IV.    DISCOVERY PRODUCED BY GE AND DISCUSSIONS ABOUT CLAIM CHARTS

At best, GE has made statements in its motion to strike that are misleading and leave a false impression. After making sweeping allegations that Smith's claim charts are deficient and that GE explained "the deficiencies in Smith's P.R. 3-1 disclosures, and again requested that Smith amend his disclosures", GE begins the next paragraph with the statement that "Smith represented to GE, through his counsel, that he would provide detailed claim charts if provided the technical details of GE's products and its non-infringement positions," intentionally leaving the Court with the impression that

Smith conceded that his claim charts were deficient and agreed to correct those deficiencies. GE neglects to mention that the conservation to which it refers occurred before the 3-1 claim charts were done, and that the conversation took place in the context of a settlement conference governed by FED. R. CIV. EVID. 408.

A complete description of the facts is illuminating. When Smith filed this lawsuit, he sent GE a letter through counsel directly to GE's corporate offices.[9] In the letter, Smith notified GE that it had been sued for patent infringement; he provided GE with a claim chart for claim 15 as an example of Smith's infringement analysis on one claim; and he offered to discuss settlement with GE.[10] In response to that letter, GE's counsel offered to meet with Smith's counsel to discuss settlement. On March 7, 2008, the parties met in Washington, D.C. During the meeting, the only claim chart that was available was the preliminary chart for claim 15 that Smith had sent to GE for purposes of settlement discussions. At that time, the Court had not yet set its scheduling conference; consequently, the 3-1 infringement contentions had not been done.

Interestingly, GE did not complain that even the preliminary chart for claim 15 was "devoid of any explanation or analysis" or that it could not understand Smith's infringement position with respect to that claim.[11] Rather, GE said that it could not analyze Smith's infringement positions on the other claims since it only had a chart for claim 15. In this context, Smith said, "That he would provide detailed claim charts if provided the technical details of GE's products and its non-infringement positions." At that time, Smith pointed out he would eventually have to provide claim charts anyway

---

[9] A true and correct copy of that letter is attached to this response and incorporated herein by reference as Exhibit 1.
[10] A copy of Smith's December 3, 2007 letter is attached as Exhibit 1.
[11] As alleged in its Motion to Strike, p. 1.

pursuant to the Court's local rules, and GE would eventually have to provide the technical details for its products and its non-infringement positions. Since this conversation occurred in the context of settlement discussions, it is unclear why GE considered it appropriate to bring up Smith's statements in its motion. Nevertheless, GE has brought it up, and for that reason, Smith feels compelled to set the record straight so that the Court is not left with a false impression.

GE also makes much of its production of nearly a million pages of documents, glossing over the fact that the entire production has taken place rather recently (See Timeline Below). GE complains, "Since March 21, 2008, Smith has had all of the information necessary to produce detailed (and compliant) infringement contentions."[12] While Smith maintains the claim charts are detailed and fully compliant, GE's statements regarding the production of documents are grossly misleading. Smith's claim charts were served April 14, 2008,[13] shortly after GE produced 9,543 pages of material, only 1% of the total 875,249 pages. The vast majority of the production which GE complains was not included in the 3-1 claim charts was produced after Smith already served the claim charts. In fact, GE produced the bulk of the material less than a month before it filed its motion to strike.[14] For example, GE produced twelve discs a mere six days before filing its motion, contributing 140,287 additional pages of technical material.

---

[12] Motion to Strike p. 11.
[13] *See* Plaintiff Smith's Notice of Compliance (DE 21), April 14, 2008.
[14] From May 16, 2008 to June 3, 2008 GE produced 817,591 pages of discovery comprising forty of the total forty-six discs.

11

| DATE PRODUCED | BATES NUMERS |
| --- | --- |
| 3/21/08 | GE 0000001-0009498 (2 DVDs), 0009499-0009501 (1 CDs) |
| 3/31/08 | Bates numbers not listed (Email attachments) |
| 4/2/08 | GE 0009524-0009543 (Email attachment) |
| 5/2/08 | GE 0009544-0009545 (1 DVD, 1 CD—source code to be viewed in Longview, TX), GE 0009546-0057564 (4 DVDs) |
| 5/7/05 | GE 005765-0057657 (1 CD) |
| 5/16/08 | GE 0057658-0138352 (4 CDs) |
| 5/21/08 | GE 0138353-0546787 (13 CDs) |
| 5/22/08 | GE 0546788-0732877 (10 CDs) |
| 5/29/08 | GE 0873031-0875249 (1 CD) |
| 6/3/08 | GE 0875250-0875385 & GE 0732878-0873029 (11 DVDs), GE 0873030 (1 CD—source code to be viewed at Longview, TX) |

Forty-six disks containing nearly a million pages of information are difficult to use in any coherent way. Smith loaded the discs onto a database where they can be searched and retrieved; a time-consuming process that was only completed recently. Again, all of this was discussed with GE's counsel. Simply, GE has misrepresented the status of its production to Smith and the realistic effect it could have had on Smith's claim charts.

## VI. CONCLUSION

Smith complied with P.R. 3-1 requirements by supplying detailed infringement contentions and carefully researched claim charts identifying the infringing GE products and the basis for the claims. Smith has also conferred with GE in good faith to resolve any problems and to narrow the issues in dispute. GE responds with vague allegations in a motion to strike that is both baseless and misleading. Smith respectfully asks the court to deny GE's Motion to Strike and GE's alternative request for Smith to amend his disclosures.

Respectfully submitted

ANDERSON & CUNNINGHAM, P.C.

s/_____
David K. Anderson
SBT No. 01174100
SDT No. 7405
270 First City Tower
1001 Fannin Street
Houston, Texas 77002-6799
Telephone: 713-655-8400
FAX: 713-650-8745
ATTORNEY-IN-CHARGE FOR PLAINTIFF

OF COUNSEL:

ANDERSON & CUNNINGHAM, P.C.

Julie B. Cunningham
SBT No. 05240700
SDT No. 15051
270 First City Tower
1001 Fannin Street
Houston, Texas 77002-6799
Telephone: 713-655-8400
FAX: 713-650-8745

**CERTIFICATE OF SERVICE**

    I hereby certify that a true and correct copy of the foregoing instrument was served upon all counsel of record pursuant to the Federal Rules of Civil Procedure via the Court's CM/ECF on this 27th day of June, 2008, as follows:

Byron W. Cooper
GOODWIN PROCTER, L.L.P.
135 Commonwealth Drive
Menlo Park, California 94025
Telephone: (650) 752-3100
FAX: (650) 853-1038
BCooper@ goodwinprocter.com

T. John Ward, Jr.
WARD & SMITH LAW FIRM
P.O. Box 1231
Longview, Texas 75606-1231
Telephone: (903) 757-6400
FAX: (903) 757-2323
jw@jwfirm.com

                                                /s/ David K. Anderson
                                                _____
                                                David K. Anderson