IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION

| | | |
|---|---|---|
| JOSEPH SMITH, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | CASE NO. 2:07-CV-527-LED-CE |
| | § | |
| GENERAL ELECTRIC COMPANY, | § | |
| | § | JURY TRIAL REQUESTED |
| Defendant. | § | |
| | § | |

**PLAINTIFF JOSEPH SMITH'S SUR-REPLY TO DEFENDANT'S REPLY IN SUPPORT OF MOTION TO STRIKE PLAINTIFF'S PATENT RULE 3-1 INFRINGEMENT CONTENTIONS**

**I.   INTRODUCTION**

As with Defendant General Electric Co.'s ("GE") motion to strike, GE's reply again is riddled with vague and pejorative accusations, making it difficult for Plaintiff Joseph Smith ("Smith") to respond. In those rare instances where GE provides at least some specificity, Smith has shown that GE's position is unreasonable. Smith will address three issues: first, Smith's compliance with P.R. 3-1; second, Smith's specific identification of the GE VeriWise Asset Intelligence product; and third, the various misstatements in GE's reply.

**II.   SMITH FULLY COMPLIED WITH P.R. 3-1**

First, Smith will address GE's continued reiteration of the "database" and "no port" issues. Second, Smith will address the new objections GE brought forward for the first time in its reply.[1]

---
[1] Smith notes a reply is hardly an appropriate place to experiment with new arguments.

1

## A. GE's CONTINUED COMPLAINTS

GE complained in its motion to strike that Smith had not adequately shown that GE's VeriWise product utilized a database. Smith pointed to his claim chart where he references a GE diagram that explicitly shows data flowing into a GE Server where it is stored and processed—i.e., a database. Smith noted that GE has identified a GE employee whose job is management of that database.[2] Finally, Smith pointed out that a database is inherently necessary to the operation of GE's VeriWise product.

Faced with overwhelming and undeniable evidence that GE utilizes a database in its VeriWise product, Smith cannot understand why GE is still talking about this issue, except perhaps to ventilate some sort of technical argument. GE says in its reply that Smith's position on the database is, "unsupported by any evidence beyond attorney argument."[3] Smith questions whether GE has even read his response. Smith did not offer "attorney argument," he offered GE's own records as referenced in his claim charts. GE says that "[Smith] now argues that a database is implicit, but if that was his theory, it should have been presented in his charts." While a database is essential and inherent to the product, it is also explicitly disclosed in the GE documents cited in Smith's claim charts.

As Smith argued in his response, GE's position on the "no port" issue reflects a disagreement over infringement, not a problem with the claim charts. Yet, GE reiterates that same argument in its reply. GE argues that the documents provided to Smith show that VeriWise does not meet this element, but those documents show no such thing.

---

[2] Smith Response, p. 4-5, DE #38. The picture came directly from GE's website. The name of the Engineer, John Sopko, was identified in Defendant General Electric Co.'s Initial Disclosure Statement to Plaintiff Joseph Smith.

[3] GE's Reply, p. 3, DE #39.

2

The document cited by GE shows that the device can read its own internal programming, but it does not show that an outsider can plug into the device and read the internal programming.

GE has been inconsistent on this issue. In an attempt to argue that GE does not infringe other claims which require that the device be configurable, GE argues that VeriWise has only two dedicated ports—one for the door sensors and one for the cargo sensors.[4] GE argues that those ports cannot be configured for any other use. If this were true, then VeriWise necessarily meets the limitation of claim 1 that requires no port for reading the programming. When GE argues it does not infringe claim 1, it claims it has a port for reading the programming of its microcontroller. When GE argues it does not infringe claim 3, it changes its position such that that it only has two ports, each of which are dedicated to only one function.

### B. GE's NEW OBJECTIONS

GE brings three issues up for the first time in its reply—"definition data," "selectively communicating," and "items to be controlled."[5] Otherwise, GE retreats to vague statements like "The list goes on."[6] Briefly, Smith will address each of these items, since they are the only objections specific enough for a response.

### "Definition Data"

Under a section on GE's website titled, "How it Works", GE says the following:

> VeriWise is a two-way data transmission system in which various types of information can be sent from and received by the VeriWise device. Messages about activity at the trailer such as door and cargo status, the

---

[4] See Letter GE Counsel to Smith Counsel, April 14, 2008, (EXHIBIT 1).
[5] GE Reply, p. 3, DE #39.
[6] GE Reply, p. 3, DE #39.

3

entering or exiting of geo-fences and more are transmitted from the VeriWise device installed on the trailer.[7]

Below this text, GE sets out the diagram of the VeriWise system discussed in Smith's response. The VeriWise product inherently uses "Definition Data" to distinguish between different functionalities (EXHIBIT 2).[8] Smith stated this in claim 3 among others (EXHIBIT 2).[9]

### "Selectively Communicat[ing] Only With Targets With Which Said Client is Associated."

VeriWise would be useless to GE and the customer if the product did not distinguish between assets and between clients. GE states:

> With VeriWise cellular-and satellite-based solutions, *you'll* know exactly where and when a trailer starts and stops, and if a door is opened en route. *You'll* know when a trailer is a pre-defined distance from a location or destination with advanced landmarking functionality.[10]

The product allows clients to communicate with their targets to the exclusion of competitors also using VeriWise. Allowing competitors access to VeriWise information about a target would be disastrous to the client. Without the functionality allowing clients exclusive access to their data, competitors would be able to tamper with another's targets and GE would only be able to market to one client at a time. Smith cited the above website in claim 1 among others (EXHIBIT 3).[11]

### "Items to be Controlled"

---

[7] See General Electric Company, http://www.trailer-services.com/veriwise/how.html (last visited July 14, 2008).
[8] See Smith Claim 3, p. 3 (EXHIBIT 2)
[9] For example, "definition data must be entered into the database to define the variables being monitored and the targets being monitored for a particular customer." Smith Claim 3, p. 3 (EXHIBIT 2).
[10] See General Electric Company, http://www.ge.com/equipmentservices/assetintelligence/solutions/segments/trucking/index.html (last visited July 14, 2008). (emphasis added)
[11] For example, See Smith Claim 1, p.1 (EXHBIT 3).

4

Again, on the "How it Works" website, GE states, "Modifications to geo-fences, requests for location, and turning on or off of sensors are sent to the VeriWise device using over-the-air (OTA) commands."[12] Similarly, Smith states in claim chart 4, "VeriWise also allows the customer to do over the air configurations, controlling the Module Schedule Configuration, Module Reefer Configuration."[13] The product provides clients with control over their targets. Again the functionality is inherent to the product and demonstrated in Smith's claim charts.

## III. SMITH IDENTIFIED A SPECIFIC PRODUCT

According to GE's website, the GE VeriWise Asset Intelligence product is a single product that can be configured to satisfy the individual client's needs. GE says that VeriWise is made up of 47 distinct products, but even GE cannot identify those 47 products. In its reply, GE suggests that it distinguishes its VeriWise product offering according to the type of vehicle on which it is installed—such as trucking, rail, marine or intermodal.[14] This hardly accounts for the alleged 47 distinct products, but if GE wishes to distinguish its product offering in this way, it could have simply said so. This distinction is immaterial to Smith's infringement analysis except in the instance where that is noted in the claim chart (EXHIBIT 4).[15] The patent itself explains the claimed technology can be used to monitor "A wide range of targets or assets…including but not

---

[12] See General Electric Company, http://www.trailer-services.com/veriwise/how.html (last visited July 14, 2008).
[13] See General Electric Company, http://www.ge.com/equipmentservices/assetintelligence/solutions/segments/trucking/cold_chain/index.html (last visited July 14, 2008).
[14] GE Reply, p. 2, DE #39.
[15] The type of vehicle is immaterial to the infringement analysis and the function of the product. Whether on a boat, truck, train, or any other vehicle, the VeriWise product still provides information remotely to the client as to location, cargo, brakes, doors, ect. of individual vehicles and targets. Smith directed his claim charts accordingly the one time a claim required a particular vehicle—in Claim 40's reference to a transport or storing "vessel" (EXHIBIT 4).

limited to vehicles, trains, cargo ships, persons, utility units, buildings, and other targets."[16] It does not matter whether the product is used to track a truck, a railroad car or some other type of container.

In its reply, GE cites for the first time a document that is titled VeriWise Model List, but the document does not clearly list separate products, and it is difficult to interpret. This document sheds no light on the supposed multitude of products.[17] This documents lists things such as "Battery" and "Box with bracket". Surely, GE is not arguing that every component part constitutes a unique product.

GE argues Smith's position is "based on his assumption that every different possible VeriWise configuration is the same product."[18] This suggests that GE's position is that every configuration, perhaps every installation, is a different product. It is unclear how GE justifies the position that different configurations of the same technology create unique products. Again, Smith would point to the example of the "Covert Antenna" listed alongside other "categories" on GE's website and discussed at length in Smith's response.[19] GE's reply failed to respond to this point, but obviously hiding the antenna from view does not change the product. To require that Smith do a claim chart for every product feature could go on endlessly, and it would not add to the infringement analysis.

## IV. GE'S MISSTATEMENTS

Smith points-out some of GE's misstatements to clear up any potential confusion. First, GE accuses Smith of arguing that he had insufficient information to do the claim

---

[16] U.S. Patent No. 6,611,686 B1, at column 2: 4-7 (filed May 24, 1999).
[17] GE Reply, Exh. 2, DE #39.
[18] GE Reply, p. 3, DE #39.
[19] Smith Response, p. 7-8, DE #38.

6

charts, when Smith clearly stated that he believed that he had sufficient information to do "detailed, thorough, and complete" claim charts.[20] Smith stated this position clearly and unequivocally numerous times in his response.[21] He does not now, nor has he ever, claimed his contentions lacked sufficient information. Nothing limits Smith's use of relevant documents outside of those produced by GE; particularly if the outside documents are GE's own descriptions and specifications to the market at large.

Second, Smith takes issue with GE's definition of "ample time."[22] Smith had sufficient information to complete his claim charts, but GE's allegation that Smith could have used the approximately 1 million pages of documents produced by GE to do his claim charts is inaccurate. Again, GE produced the vast majority of its production (99%) after Smith's claim charts, and most of that only weeks before its motion to strike.[23] However, GE claims Smith had everything he needed with the first 2 discs, never mind the next forty-four.[24]

Third, GE neglects to mention the March 17, 2008 discussions with GE counsel were under Rule of Evidence 408 for the stated purpose of settlement and his initial chart for claim 15 was provide for that purpose as well.[25] GE takes Smith's offer to discuss settlement, and Smith's tender of analysis not even required at that time, as evidence that Smith had not fully investigated its infringement contentions, rather than for what it was—a settlement discussion.

---

[20] GE Reply, p. 2, DE #39; Smith Response, p. 2, DE #38.
[21] Smith Response, p. 1, 2, 11, 13, DE #38.
[22] GE Reply, p. 2, 3, 5, DE #39.
[23] See chart of production timeline. Smith Response, p. 11-12, DE #38.
[24] GE Motion to Strike, p. 11, 4, DE # 33; GE Reply, p. 1-2, DE #39.
[25] GE Reply, p. 1, DE #39.

Finally, Smith has no idea how to respond to GE's vague accusation that Smith misstates various facts. Like so many of GE's ambiguous objections, GE complains in a footnote, "Smith also misstates various facts, including the contents of conversations between counsel. Notably, Smith provides no support for these factual assertions."[26] GE never identifies what facts Smith supposedly misstates. GE also fails to identify the "support" it expected. Smith supplied references to GE materials, complete descriptions of events, and even a table to demonstrate GE's own production. GE's accusations of factual misstatements are another example of GE's continued refusal to clearly identify its own objections.

## V. CONCLUSION

For the reasons set forth above and in Smith's response, Smith respectfully requests that GE's motion to strike be denied.

Respectfully submitted

ANDERSON & CUNNINGHAM, P.C.


s/_____
David K. Anderson
SBT No. 01174100
SDT No. 7405
270 First City Tower
1001 Fannin Street
Houston, Texas 77002-6799
Telephone: 713-655-8400
FAX: 713-650-8745
ATTORNEY-IN-CHARGE FOR PLAINTIFF

---

[26] GE Reply, p. 1, FN 1, DE #39.

OF COUNSEL:

ANDERSON & CUNNINGHAM, P.C.

Julie B. Cunningham
SBT No. 05240700
SDT No. 15051
270 First City Tower
1001 Fannin Street
Houston, Texas 77002-6799
Telephone: 713-655-8400
FAX: 713-650-8745

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing instrument was served upon all counsel of record pursuant to the Federal Rules of Civil Procedure via the Court's CM/ECF on this 14th day of July, 2008, as follows:

> Byron W. Cooper
> GOODWIN PROCTER, L.L.P.
> 135 Commonwealth Drive
> Menlo Park, California 94025
> Telephone: (650) 752-3100
> FAX: (650) 853-1038
> BCooper@ goodwinprocter.com

> T. John Ward, Jr.
> WARD & SMITH LAW FIRM
> P.O. Box 1231
> Longview, Texas 75606-1231
> Telephone: (903) 757-6400
> FAX: (903) 757-2323
> jw@jwfirm.com

/s/_____
David K. Anderson